Neil CRASS, d/b/a Crass Coal Company

v.

TENNESSEE VALLEY AUTHORITY

v.

Neil CRASS, d/b/a Crass Coal Company.

Civ. No. 3–78–212.

United States District Court,
E. D. Tennessee, N. D.

Oct. 6, 1978.

W. P. Boone Dougherty, Knoxville, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Charles A. Wagner, III, Robert C. Glinski, Elizabeth A. E. Brown, TVA, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This case is a contract dispute between the Tennessee Valley Authority (TVA) and one of its former coal suppliers. The plaintiff formerly operated surface mines at three sites in Morgan County, Tennessee, under contracts to sell the coal to TVA. These contracts contain reclamation provisions which TVA accuses plaintiff of violating. After completing the extensive administrative proceedings within TVA to resolve contract disputes, plaintiff filed this action to review TVA's final administrative decision which found him in violation of the contracts. Plaintiff contends the TVA decision was arbitrary and in violation of several constitutional provisions.

### I. Scope of Review

■ The scope of our review of this case is governed by the "Disputes" clause found in the contracts between plaintiff and TVA. That clause provides as follows:

> The decision of the General Manager or his representative or representatives shall be final and conclusive upon the parties except on questions of law or unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence . . . .

Therefore, in reviewing the administrative actions below, this Court will confine its examination to the questions of law presented and to whether the final decision of TVA's hearing officer was capricious, arbitrary, grossly erroneous or not supported by substantial evidence.

### II. Questions of Law

Plaintiff contends the reclamation provisions of his contracts with TVA, and the manner in which those provisions were applied to him were contrary to the due process clause of the Fifth Amendment to the Constitution. Plaintiff's argument breaks down into the following:

1) that the reclamation provisions are vague and ambiguous;

2) that the reclamation provisions leave TVA surface mine inspectors with total, unfettered discretion to make decisions affecting plaintiff's rights and livelihood, and

3) that the manner of enforcement of the reclamation provisions in the case denied plaintiff equal protection of the law.

These three intertwined arguments will be dealt with separately in this opinion.

### A. Vagueness

Plaintiff claims the following reclamation provisions are unconstitutionally vague:

> [Contractor will] revegetate the disturbed area with trees . . . so as to ensure that the disturbed area will be covered by vegetation well distributed throughout the entire area. [§ 11.g of the contract 68P–83–T4; § 11.h of contracts 68P–86T14 and 69P–89–T1].

> [Contractor will] smoothly grade and backfill the final bench to slope toward the highwall at a grade not to exceed ten (10) degrees and in a manner that prevents depressions which may accumulate water. . . . [§ II.B(5) of contracts 73P–62–5114, 73P–61–5129, 72P–60–5249, and 72P–60–5203].

The revegetation provision above covers plaintiff's "Frost Bottom" site. The grading requirement is found in the contract provisions governing contour mining at plaintiff's "Pine Orchard" site.

■ As to the Frost Bottom revegetation provision, plaintiff claims there is ambiguity in the words "ensure" and "well distributed." Plaintiff offers no reasonable interpretation of these words differing from TVA's interpretation. Instead, he attempts to prove the ambiguity by demonstrating that he attempted to comply but was nevertheless found in violation of the revegetation requirement. The failure of an attempted good faith compliance does not establish ambiguity. The Court is of the opinion that the language is clear in its requirements. The word "ensure" simply

means that plaintiff's revegetation efforts must be successful to comply. The term "well-distributed" may be interpreted only two ways when read in light of the purpose of this revegetation provision. "Well-distributed" means a distribution sufficient either to leave a good appearance or to prevent soil erosion, or both. (See Hearing Officer's findings at A.R. 927). Compliance with either of these interpretations would have been sufficient. (A.R. at 927). The Court finds, as a matter of law, that the revegetation provision in the Frost Bottom contracts is not unconstitutionally vague or ambiguous.

■ As to the grading requirements at the Pine Orchard site, plaintiff claims the words "smoothly grade and backfill" and "final bench" are ambiguous. Plaintiff also finds ambiguity in the requirement to "prevent depressions which may accumulate water." Again plaintiff offers no varying reasonable interpretations to prove ambiguity. The Court finds no ambiguity in this grading provision. The term "final bench" is a clearly understood term in the parlance of surface mine operators. (See plaintiff's testimony, A.R. at 513). Although the requirement to "smoothly" grade and backfill does leave some room for judgments as to smoothness, this phrase is not so vague as to be unconstitutional. Again, this phrase must be construed in light of the common understandings of the profession to which it applies. In the land grading business, "smoothly grade" has a commonly understood objective meaning. (See Hearing Officer's decision, A.R. at 925). The phrase "depression that accumulates water" is also a clearly understood, objective term in the surface mining business (A.R. at 924).

There has been no reasonable suggestion by plaintiff that these reclamation provisions are

> "so vague that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." *Brennan v. Occupational Safety and Health Review Commission*, 505 F.2d 869, 872 (10th Cir. 1974).

People of common intelligence in the surface mining business know what these reclamation provisions mean. (A.R. 924–927).

Since the Court finds no unconstitutional vagueness, we need not decide whether the contractual reclamation requirements here comprise rules or regulations.

### B. Uncontrolled Discretion

■ Plaintiff insists that the reclamation provisions discussed above are so vague and ambiguous they give TVA surface mine inspectors unfettered and total discretion without objective standards to decide whether a contractor has complied or not. First, this Court does not see the vagueness or ambiguity of which plaintiff complains. The Court finds that requirements to "ensure" revegetation which is "well distributed" over the disturbed area, and to "smoothly" grade and backfill the final bench so as to prevent depressions that may accumulate water provide very objective standards to govern surface mine inspectors. (See A.R. 924–927). Further, the discretion of surface mine inspectors is not "total" as plaintiff claims. The inspector's discretion, if any, is subject to extensive review by TVA's contracting officer, a TVA Hearing Officer, this Court, the Court of Appeals, and the Supreme Court if necessary. Plaintiff clearly has a remedy against arbitrary and capricious action by mine inspectors under these contracts. In other words, plaintiff has had, and continues to have, due process of law.

### C. Equal Protection

■ Finally, plaintiff claims the manner in which TVA has enforced the reclamation provisions against him violated his right to equal protection of the law. Basically, plaintiff claims these provisions have not been enforced against other surface miners, or at least not to the same degree. Assuming this to be true, there is still no equal protection claim stated. Selective enforcement alone is not unconstitutional. *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The equal protection right is violated by selective enforcement

only when the selection is based on an "arbitrary classification." *Oyler v. Boles, supra.* The only "arbitrary classification" alleged by plaintiff is the selection of plaintiff, out of numerous surface miners allegedly violating their contracts, as the violator to be sued. In other words, plaintiff claims he is being placed in an arbitrary classification simply by being the victim of selective enforcement. This is a circular argument and represents a misunderstanding of the *Oyler* decision.

### III. Review of Administrative Proceedings

The final issue before the Court in this motion is whether TVA's actions have been arbitrary, capricious, or not supported by substantial evidence. We shall discuss the Hearing Officer's findings regarding plaintiff's three mine sites separately.

### A. Pine Orchard

■ The Hearing Officer held TVA was entitled to $7,333 for plaintiff's failure to properly grade the Pine Orchard site, and $4,367 for plaintiff's failure to properly revegetate the Pine Orchard site. All damages are based on what the Hearing Officer determined would be the cost to TVA to perform this reclamation work itself. There is no dispute that the Pine Orchard site has been left in a condition not complying with the reclamation requirements. One of the plaintiff's claims, however, is that his failure to reclaim the Pine Orchard site was excused by his own intent to redisturb the area in further surface mining. TVA does have a policy of relieving surface mine operators of reclamation requirements when they demonstrate that the land is about to be disturbed again by themselves or other miners. (A.R. at 920). However, plaintiff's mere intent to redisturb the land would not excuse him indefinitely. The Hearing Officer found:

"There was no evidence that TVA had ever applied their policy to relieve a contractor from his reclamation obligations indefinitely, or that this contractor had any reasonable basis for a belief that

rejection by TVA of his offer to mine additional coal for TVA in a given area would cancel contractor's obligation to reclaim portions of the area already distributed (*sic*) on previous TVA contracts." (A.R. at 920)

In fact, TVA's policy as revealed by its inspector's testimony was to relieve miners of reclamation obligations *after* the land had already been redisturbed. (A.R. at 92–94). The Hearing Officer's decision that plaintiff's intent, in 1973, to redisturb the land mined by him did not excuse him from his present reclamation obligations was neither arbitrary nor capricious.

■ The Hearing Officer's figure of $7,333 as the cost of regrading eight acres at the Pine Orchard site is based in part on the testimony of Mr. Charles Hathaway, the assistant general construction superintendent for the Construction Services Branch of TVA (A.R. at 295). Plaintiff challenges the credibility of Mr. Hathaway's testimony, arguing he was not qualified to make estimates on regrading the Pine Orchard area and that his estimates were contradicted by another TVA estimate and by plaintiff himself. The Hearing Officer's decision that Mr. Hathaway was qualified to make an estimate is supported by substantial evidence. Mr. Hathaway's duties were to supervise TVA field construction work and to forecast and schedule labor and equipment needs for such work. Part of this work included making estimates of the cost of grading work. (A.R. at 295, 296). In reviewing an administrative record, the District Court does not make *de novo* decisions about the credibility of witnesses. The Hearing Officer had substantial basis for giving credence to Mr. Hathaway's testimony. As to the contradictory evidence, the Hearing Officer was reasonable in giving it little weight. Plaintiff's own testimony could be self-serving and did not include some unavoidable costs. The lower TVA estimate on the Pine Orchard grading work was in a report from TVA's Forestry, Fisheries, and Wildlife Development Division, (A.R. at 912) which reasonably would not be expected to have as much experience in

grading as the Construction Services Branch to which Mr. Hathaway belonged. The Hearing Officer made specific allowances (lowering the prior awards by the contracting officer) for acres at Pine Orchard not disturbed by plaintiff or disturbed on a non-TVA job, and for those acres on which plaintiff claimed TVA had tentatively accepted plaintiff's grading (A.R. at 914). After these allowances, the Hearing Officer charged plaintiff for only six unreclaimed acres. This is not arbitrary and capricious action. The Court finds that the Hearing Officer's award of $7,333 for grading at Pine Orchard is not arbitrary or capricious and is supported by substantial evidence.

As to revegetation at Pine Orchard, the Hearing Officer's award of $4,367 is based on the uncontradicted testimony of a professional forester (A.R. at 914, 915). Here, again, the Hearing Officer made specific allowances for acres not disturbed by plaintiff or disturbed on a non-TVA job. The $4,367 is supported by substantial evidence.

### B. Bladshaw Branch

 There is no dispute that plaintiff has not revegetated the three-quarters acre at issue at the Bladshaw Branch site. Again plaintiff claims he was excused from the revegetation provisions by his intent to redisturb the land. For reasons stated earlier, this is not a valid excuse at this date. Plaintiff also contends that the area at issue has actually been redisturbed, thus excusing him from the reclamation provision. The only evidence of this are some marks resembling bulldozer tracks. However, these tracks reveal nothing more than the possibility that a bulldozer was parked overnight at the site (A.R. 917, Ex. A-1). The Hearing Officer's decision finding no more than negligible redisturbance of this land is neither arbitrary nor capricious. TVA's forestry expert estimated the cost of revegetating this three-fourths of an acre at $1,372 (A.R. at 917). The Hearing Officer's award of this amount to TVA is supported by substantial evidence.

### C. Frost Bottom

The only dispute as to the Frost Bottom site is plaintiff's claim that his conscientious attempt at revegetation there is evidence of the ambiguity of the revegetation provision applicable at this site. The Court has dealt with this claim earlier. The evidence is clear and substantial that plaintiff has failed to "ensure that the disturbed area will be covered by vegetation well distributed throughout the entire area." (See Ex. G-16). The Hearing Officer's finding that several bare areas remain at Frost Bottom is supported by substantial evidence (Ex. 16, A.R. 918).

TVA's forestry expert testified the cost of revegating these bare spots would be $450 (A.R. at 918). The Hearing Examiner's award of this amount is supported by substantial evidence.

 The Hearing Officer's determination that plaintiff has failed to comply with the valid reclamation provisions of his contracts with TVA, and that he owes TVA a total of $13,522, representing the cost to TVA of performing this reclamation work, is not arbitrary or capricious and is supported by substantial evidence. Again, we find no merit in plaintiff's constitutional arguments.

Accordingly, it is ORDERED that defendant's motion for summary judgment of dismissal be, and the same hereby is, granted. It is further ORDERED that counter-plaintiff's motion for summary judgment of affirmance of the TVA Hearing Officer be, and the same hereby is, granted.