**UNITED STATES of America**

v.

**David D. SCHOOLCRAFT, Appellant.**

No. 88–5757.

United States Court of Appeals, Third Circuit.

Argued Feb. 3, 1989.

Decided June 22, 1989.

Rehearing and Rehearing In Banc Denied July 18, 1989.

---

as holds that Westinghouse acted willfully in discharging Durham.

Daniel I. Siegel, (argued), Federal Public Defender's Office, Harrisburg, Pa., for appellant.

William A. Behe, (argued), U.S. Atty.'s Office, Harrisburg, Pa., for appellee.

Before HUTCHINSON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

This is an appeal from a judgment of conviction and imposition of sentence for violation of 18 U.S.C. § 922(a)(6) (Supp. IV 1986) and 18 U.S.C. § 922(g)(1) (Supp. IV 1986). In particular, David D. Schoolcraft appeals his conviction and enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (Supp. IV 1986). We hold that Schoolcraft need not have been convicted of one predicate offense before committing the crime underlying a subsequent predicate offense to receive an enhanced sentence under the Armed Career Criminal Act. Because we reject Schoolcraft's other contentions, we will affirm the judgment of conviction and judgment of sentence.

## I.

On February 10, 1988, a federal grand jury returned a two count indictment against Schoolcraft. Count one charged a violation of 18 U.S.C. § 922(a)(6), making a false statement in the acquisition of a firearm, and count two charged a violation of 18 U.S.C. § 922(g)(1), unlawful possession of a firearm by a previously convicted person. The Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), provides enhanced sentences when a defendant is convicted of § 922(g) and has at least three prior convictions. In this case, the government filed a document entitled "Information Charging Prior Offenses," and alleged in connection with count two that Schoolcraft's prior convictions for six offenses supported enhanced sentencing under the ACCA. The government alleged one prior conviction for burglary, one prior conviction for escape, one prior conviction for robbery, and three prior convictions for armed robbery. The three armed robbery convictions resulted from three robberies which occurred within a two hour period on the same night.

Before trial, Schoolcraft filed numerous motions, including a motion to dismiss the indictment based on vindictive or selective prosecution. He alleged that the district attorney of Adams County, who had referred the case to the federal authorities for prosecution under the ACCA, was motivated by bad faith and vindictiveness. Schoolcraft requested that the indictment be dismissed with prejudice. The district court denied the motion without a hearing. At the jury trial, Schoolcraft was convicted on both counts of the indictment.

Schoolcraft filed a post-verdict notice of intent to challenge enhanced sentencing, claiming that he lacked the three prior convictions necessary to impose an enhanced sentence under the ACCA. He did not contest the burglary and the robbery offenses as predicate offenses for the purposes of sentencing enhancement, but contended that the prior conviction for escape could not be counted as a predicate conviction under the ACCA since it was neither a violent felony nor a serious drug offense under 18 U.S.C. § 924(e)(2). He also argued that the three armed robbery convictions could not be counted as predicate offenses since the offenses took place before he was convicted of the robbery offense.

At the sentencing hearing, the district court declined to count the escape conviction as a predicate conviction under the

ACCA. In conformity with the panel opinion in *United States v. Balascsak*, No. 88–5089, slip op. (3d Cir. September 6, 1988), in which this court held that convictions arising from criminal episodes "distinct in time" subjected a defendant to enhanced sentencing under the ACCA, the district court included the three armed robberies as predicate convictions. Based on (1) the burglary, (2) the robbery, and (3) the three armed robberies, the district court found prior convictions sufficient to support enhanced sentencing under the ACCA. Schoolcraft was sentenced to five years imprisonment on count one and fifteen years on count two, both to run concurrently. Fifteen years is the minimum sentence under the ACCA. 18 U.S.C. § 924(e)(1).

After the imposition of sentence, our court of appeals vacated the *Balascsak* panel opinion that was followed by the district court in this case. *United States v. Balascsak*, No. 88–5089 (3d Cir. September 29, 1988) (vacating opinion and judgment and granting rehearing in banc). Schoolcraft filed a timely notice of appeal from the judgment of conviction and imposition of sentence. He asserts that: (1) the district erred in denying without a hearing, his motion to dismiss the indictment on the basis of vindictive or selective prosecution; (2) the government failed to present sufficient evidence that he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (3) the government failed to establish predicate convictions sufficient to support enhanced sentencing under the ACCA. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Schoolcraft contends that when the Adams County district attorney referred the firearms offenses to the United States attorney for prosecution under the ACCA, the referral was tainted by bad faith and vindictiveness. Schoolcraft makes two principal allegations. First, he claims that the district attorney initially brought state charges against him for rape, carrying a firearm without a license, and ownership of a firearm by a former convict. According

to Schoolcraft, the district attorney then referred the firearms counts to the federal authorities knowing that he would be subject to stiffer penalties under the ACCA. In the state prosecution, Schoolcraft says he was convicted of rape, but was granted a new trial.

Second, Schoolcraft alleges that the district attorney, as private counsel, represented private parties opposing Schoolcraft in a contract dispute. According to Schoolcraft, the dispute ended in a settlement favorable to him, and the district attorney told him that if he ever came before him, the district attorney would "nail him to the wall." Schoolcraft claims that these facts demonstrate that the district attorney's referral of the firearms counts to the federal authorities was motivated by bad faith. He argues that the actions of the district attorney constituted both vindictive and selective prosecution and that he was deprived of his right to due process and equal protection of the law.

■ In both vindictive and selective prosecution claims, we review the district court's determinations of fact under the clearly erroneous standard. *United States v. Meyer*, 810 F.2d 1242, 1244 (D.C.Cir. 1987), *cert. denied*, ⸺ U.S. ⸺, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988); *United States v. Wilson*, 639 F.2d 500, 503 n. 2 (9th Cir.1981); *United States v. Ojala*, 544 F.2d 940, 944 (8th Cir.1976). The district court's application of legal precepts in these claims are given plenary review. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

■ Prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights. *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed. 2d 74 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978); *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). There is no prosecutorial vindictiveness, however, where the prosecutor's decision to prosecute is based on the usual determinative factors. *United States v. Oliver*, 787 F.2d 124, 126 (3d Cir.1986) (cit-

ing *United States v. DeMichael,* 692 F.2d 1059 (7th Cir.1982); *United States v. Ballester,* 763 F.2d 368 (9th Cir.), *cert. denied,* 474 U.S. 842, 106 S.Ct. 126, 88 L.Ed.2d 103 (1985); *United States v. Robison,* 644 F.2d 1270, 1272 (9th Cir.1981)).

In this kind of case, our focus is not on the district attorney's actions, but rather on the actions of the United States attorney who prosecuted this case. We note that the role of a separate sovereign in bringing charges against a defendant minimizes the likelihood of prosecutorial abuse. *Ballester,* 763 F.2d at 370. Indeed, the involvement of a separate sovereign tends to negate a vindictive prosecution claim. *Robison,* 644 F.2d at 1273. *See also United States v. McGriff,* 678 F.Supp. 1010, 1012 (E.D.N.Y.1988) ("the doctrine of prosecutorial vindictiveness does not apply to prosecutions brought by different sovereigns, absent a showing that a State prosecution was a stalking horse for a subsequent federal investigation").

We have addressed the question of prosecutorial vindictiveness in cases with similar facts. In *United States v. Fulford,* 825 F.2d 3 (3d Cir.1987), the defendant argued that a district attorney pressured federal authorities into seeking the defendant's indictment. We stated, "[t]hese allegations fail to set out a claim of vindictiveness on the part of the United States attorney because the charges appear to be directed against the ... district attorney." *Id.* at 9. Similarly, Schoolcraft has made no allegations against the United States attorney who prosecuted him. Schoolcraft has also failed to demonstrate that the decision of the United States attorney to prosecute him was not based on the "usual determinative factors." *Oliver,* 787 F.2d at 126. He has also failed to allege that the district attorney was a stalking horse for the federal government.

■ The defendant bears the initial burden of proof in a vindictive prosecution claim and is required to establish the appearance of vindictiveness. *United States v. Heldt,* 745 F.2d 1275, 1280 (9th Cir.1984); *Robison,* 644 F.2d at 1272. The burden then shifts to the prosecution to show that

the prosecutor's decision to prosecute was justified. *Heldt,* 745 F.2d at 1280. We hold that Schoolcraft failed to meet his burden. As we have noted, the record reflects no evidence that the decision to prosecute was not based on the "usual determinative factors." *Oliver,* 787 F.2d at 126. As in *Fulford,* "the record demonstrates that [Schoolcraft] did commit an offense against the United States and that his indictment was properly brought in the [Middle] District of Pennsylvania." *Fulford,* 825 F.2d at 9. Accordingly, Schoolcraft's vindictive prosecution claim cannot be sustained.

■ Schoolcraft has also failed to demonstrate that his indictment was the result of selective prosecution. A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive. *Government of Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *United States v. Aleman,* 609 F.2d 298, 305 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *Crass v. Tennessee Valley Authority,* 460 F.Supp. 941, 944 (E.D.Tenn.1978), *aff'd without opinion,* 627 F.2d 1089 (6th Cir.1980)). To establish a claim of selective prosecution, Schoolcraft must demonstrate two factors. First, he must provide evidence that persons similarly situated have not been prosecuted. *Id.* Second, he must show that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right. *Id.* Schoolcraft bears the burden of proof. *United States v. Berrigan,* 482 F.2d 171, 174 (3d Cir.1973); *United States v. Torquato,* 602 F.2d 564, 570 (3d Cir.), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979).

■ In his motion to dismiss the federal indictment, Schoolcraft merely alleged,

without any supporting evidence, that he was the victim of selective prosecution. Although Schoolcraft's counsel stated that he would review the criminal docket in Adams County, Pennsylvania, "to determine whether there were similarly situated defendants in the Court of Common Pleas in Adams County whose cases were not referred for federal prosecution under the Armed Career Criminal Act," the record reflects no evidence on this matter or that Schoolcraft was prosecuted on the basis of an unjustifiable standard or for exercising one of his fundamental rights. *Harrigan,* 791 F.2d at 36. Again, we hold that Schoolcraft failed to meet his burden of proof. The district court did not err in denying the motion to dismiss the indictment on the basis of vindictive or selective prosecution.

### III.

Section 922(g)(1) of title 18 makes it unlawful for a person who has been convicted of a crime punishable by a term exceeding one year to possess a firearm. Schoolcraft contends that the evidence was insufficient to convict him of this offense. He claims that the government failed to prove that he was convicted of a crime punishable by imprisonment for a term exceeding one year and that he was not "convicted of any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. 921(a)(20)(B) (Supp. IV 1986).[1]

We hold that the government presented sufficient evidence of guilt. The government presented the gun registration forms, in which Schoolcraft stated that he had not been convicted of a crime punishable for a term exceeding one year. The gun had been shipped in interstate commerce and was found in Schoolcraft's possession. The government also presented testimony that Schoolcraft had been previously convicted of robbery. State Trooper Peck, a government witness, testified on the classification and penalties for robbery in the Commonwealth of Pennsylvania. He testified that the lowest classification of robbery is a misdemeanor punishable up to seven years in prison; the highest classification is a felony punishable up to 20 years in prison.

Schoolcraft presented no evidence but moved to dismiss count two on the basis that the government did not prove that his robbery conviction was not a misdemeanor. Schoolcraft argued that a copy of certified docket entries, admitted to show that he had been convicted of robbery, did not establish whether the crime was a misdemeanor or felony, and that Trooper Peck's testimony was insufficient for this purpose. The district court denied the motion to dismiss.

Schoolcraft's argument is based on the premise that the government is required to show that he had been previously convicted of a felony to support a conviction under § 922(g)(1). The statute, however, does not require the defendant to have been convicted of a felony, but only of a crime punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(g)(1). As stated, that crime may not be a misdemeanor punishable by a term of imprisonment of two years or less. 18 U.S.C. § 921(a)(20)(B).

Our standard of review in sufficiency of the evidence claims is deferential. " 'It is not for us to weigh the evidence or to determine the credibility of the witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.' " *United States v. Aguilar,* 843 F.2d 155, 157 (3d Cir.) (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), *cert. denied sub nom. Sosa v. United States,* —— U.S. ——, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988).

---

**1.** 18 U.S.C. § 921(a)(20) defines the term "crime punishable by imprisonment for a term exceeding one year" contained in § 922(g)(1) as excluding:

    (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other offenses relating to the regulation of business practices, or

    (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

"In the course of conducting this inquiry, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *see also, Government of Virgin Islands v. Williams,* 739 F.2d 936, 940 (3d Cir.1984).

Given this standard, we find that there was sufficient evidence of Schoolcraft's guilt. The evidence presented by the government, as recounted above, established each of the elements in 18 U.S.C. § 922(g)(1). The government also established that Schoolcraft was not convicted of a misdemeanor punishable by a term of imprisonment of two years or less. 18 U.S.C. § 921(a)(20)(B). The robbery Schoolcraft had been previously convicted of could not have been a misdemeanor, nor could it have been "punishable by a term of imprisonment of two years or less." We have reviewed the relevant Pennsylvania statutes, which show the crime of robbery as a felony and the maximum sentences ranging from seven to twenty years. 18 Pa.Cons.Stat. §§ 3701(b), 1103 (1982). In sum, the testimony established that Schoolcraft had been convicted of a crime punishable for a term exceeding one year and that the crime was not a misdemeanor subject to a sentence of two years or less.

Therefore, we will affirm the judgment of conviction.

## IV.

The government sought enhanced sentencing under the ACCA. Upon conviction of 18 U.S.C. § 922(g), prohibiting the possession of a firearm by a previously convicted person, § 924(e)(1) of the ACCA[2] provides for a minimum fifteen year sentence when the defendant has three previous convictions for violent felonies or serious drug offenses.[3] The government charged that Schoolcraft had six previous convictions: (1) a burglary conviction in 1978; (2) an escape conviction in 1981; (3) a robbery committed on May 31, 1980, for which Schoolcraft was convicted on April 26, 1982; (4) armed robbery; (5) armed robbery; and (6) armed robbery. The three armed robberies were committed by Schoolcraft during a single two hour period on August 21–22, 1981 and he was convicted of these offenses on December 9, 1983.

Schoolcraft's sentencing took place on September 21, 1988. He argued that the escape conviction could not be counted under the ACCA, because it was neither a violent felony[4] nor a serious drug offense.

---

**2.** 18 U.S.C. § 924(e)(1) provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than 15 years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

**3.** This court has previously held that the ACCA did not create a new offense, but rather merely provided sentencing enhancement. *United States v. Hawkins,* 811 F.2d 210, 220 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). This result is in accord with other courts of appeal that have considered the issue. *United States v. Rumney,* 867 F.2d 714, 718 (1st Cir.1989); *United States v. Blannon,* 836 F.2d 843, 844–45 (4th Cir.), *cert. denied,* —— U.S.

—, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Affleck,* 861 F.2d 97, 99 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989); *United States v. Brewer,* 853 F.2d 1319, 1322 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Lowe,* 860 F.2d 1370, 1378 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1639, 104 L.Ed. 2d 155 (1989); *United States v. Rush,* 840 F.2d 574, 577–78 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Jackson,* 824 F.2d 21, 24 (D.C.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); *United States v. West,* 826 F.2d 909, 911 (9th Cir.1987); *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987).

**4.** Under 18 U.S.C. § 924(e)(2)(B), "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year that—(i) has as an element the use, attempted

The district court agreed, and that finding is not disputed on appeal. Of the remaining five convictions, Schoolcraft argued that the last three convictions for armed robbery could not be counted toward enhanced sentencing because he had not yet been convicted of the prior offense for robbery when he committed the three armed robberies. In support, Schoolcraft relied on the dissenting opinion of Chief Judge John Gibbons in *United States v. Balascsak*, No. 88–5089, slip op. at 14 (3d Cir. September 6, 1988).

The district court rejected Schoolcraft's argument and properly followed the majority panel opinion in *Balascsak*. The opinion on which the district court relied, however, was subsequently vacated by this court. *United States v. Balascsak*, No. 88–5089 (3d Cir. September 29, 1988) (vacating opinion and judgment and granting rehearing in banc). We must now apply this court's in banc decision, *United States v. Balascsak*, 873 F.2d 673 (3d Cir.), which was filed April 20, 1989. *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on appeal and not yet final); *see also United States v. Clemons*, 843 F.2d 741, 745 n. 3 (3d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); *United States v. Asher*, 854 F.2d 1483, 1487 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); *United States v. Zauber*, 857 F.2d 137, 140 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *cf.* Internal Operating Procedures for the United States Court of Appeals for the Third Circuit, Ch. 8(c) (consideration by the court *in banc* may overrule a published opinion of this court).

A.

The issue before us is whether Schoolcraft is subject to the mandatory sentencing provisions of the ACCA. Schoolcraft's first predicate offense, the burglary which occurred in 1978, constitutes a conviction for purposes of sentencing enhancement. *United States v. Palmer*, 871 F.2d 1202, 1208 (3d Cir.1989) (the legislative history of the ACCA evidences an intention to include burglaries as prior offenses for purposes of sentencing enhancement). Although the second predicate offense, robbery, occurred on May 31, 1980, Schoolcraft was not charged until November 23, 1981. He entered a guilty plea on March 11, 1982 and was sentenced on April 26, 1982. Schoolcraft's commission of the three armed robberies, in a two hour period on August 21–22, 1981, occurred before his conviction of robbery, the second predicate offense.

Thus, there is no dispute that the 1978 burglary and the 1980 robbery were properly considered as predicate offenses. The question is whether the 1981 armed robberies can be considered predicate offenses for the purposes of enhanced sentencing under the ACCA, because these offenses were committed before Schoolcraft was convicted of the 1980 robbery.

We look to our in banc decision in *Balascsak*. *Balascsak* presented the question whether a criminal defendant who was convicted of burglary and later convicted of two burglaries committed on a single night could be subject to enhanced sentencing under the ACCA.[5] The latter burglaries were committed on the evening of July 10–11, 1981; the first occurred at 10:45 p.m. and the second between 11:00 p.m. and 7:00 a.m. The issue was whether there were "three previous convictions" to support enhanced sentencing under the ACCA.

use, or threatened use of physical force against the person of another; or (ii) is burglary, arson or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The parties do not dispute that the predicate convictions involved in this case constitute violent felonies within the meaning of the statute.

5. In *Balascsak*, sentence was imposed pursuant to the Armed Career Criminal Act of 1984, 18 U.S.C.App. § 1202(a) (Supp. II 1984), which is the predecessor statute to § 924(e). The Firearms Owners' Protection Act, Pub.L. No. 99–308, 100 Stat. 451 (1986), repealed § 1202 and the provisions relating to penalty enhancement were moved to 18 U.S.C. § 924(e) (Supp. IV 1986).

Speaking for six members of the court, Chief Judge Gibbons reviewed the legislative history of the ACCA in determining that only a defendant "who had been twice convicted *before committing* the third crime could possibly be prosecuted under the bill." At 681 (emphasis in original). Under this analysis, where the second and third crimes took place months apart, as in this case, the later crime can not be counted for enhanced sentencing where no conviction has been entered for the previous crime. *Id.* ("it *is* obvious that the two priors must have resulted in convictions *before* the third crime took place. Three armed robberies—even months apart— would not be enough, unless there were convictions for two of them before the third took place") (emphasis in original).

Under this view, the ACCA does not apply to a person who commits three offenses without two intervening convictions. "The sort of 'three-time loser' which the supporters of the bill had in mind is one who is convicted of one crime, then commits a second, is again convicted, and then commits a third." At 682. In this case, Schoolcraft had not yet been convicted of his second crime when he committed his third crime. Thus, were we to apply the view enunciated by Chief Judge Gibbons, Schoolcraft would not be subject to enhanced sentencing under the ACCA.

Five members of the court dissented in *Balascsak,* finding that the ACCA does not mandate that there be intervening convictions before offenses could be counted for enhanced sentencing. "Congress intended that the enhanced penalty provision be applied where the convictions arise from sepa-

rate criminal episodes or transactions, without regard to when the defendant is convicted of the respective predicate offenses." *Id.* at 685. The dissent, written by Judge Morton Greenberg, relied in part on the decisions of other circuits that have considered the issue [6] as well as a recent clarification of the ACCA.[7] The dissent found that an enhanced sentence is proper where a defendant has three convictions arising from separate and distinct criminal episodes. *Id.* at 688. Under this analysis, Schoolcraft would be subject to an enhanced sentence, because he was convicted of crimes resulting from three separate criminal episodes.

In an opinion concurring in result only, Judge Edward Becker agreed with Chief Judge Gibbons that the defendant in *Balascsak* should not be subject to enhanced sentencing. However, Judge Becker agreed with the dissent's analysis of the ACCA as well as the "conclusion of a number of Courts of Appeals that Congress intended that, to qualify as triggering offenses for the enhanced penalty, the three previous convictions must each have arisen from separate criminal episodes, but need not be separated by intervening convictions." *Id.* at 684. Nevertheless, Judge Becker found that an enhanced sentence was improper because the government had not met its burden of proof in establishing that the second and third burglaries, committed in a relatively short period of time, were separate criminal episodes. *Id.* at 684.

Thus, six members of the court would require three convictions arising from separate criminal episodes to trigger enhanced sentencing under the ACCA, and six mem-

---

**6.** *United States v. Towne,* 870 F.2d 880 (2d Cir. 1989); *United States v. Herbert,* 860 F.2d 620 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Gillies,* 851 F.2d 492 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Rush,* 840 F.2d 580 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Greene,* 810 F.2d 999 (11th Cir.1986).

**7.** Section 7056 of the Anti–Drug Abuse Act of 1988, Pub.L. 100–690, 102 Stat. 4181, 4402

(1988) amended § 924(e)(1) so that it now reads:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another,* such person shall be fined not more than $25,000 and imprisoned not less than 15 years ...

This clarification was passed by the House and Senate on November 18, 1988 and became effective January 21, 1989.

bers of the court would require that there be intervening convictions in order to apply the ACCA.[8] Therefore, our in banc decision in *Balascsak* does not resolve the question whether Schoolcraft must be given an enhanced sentence.

### B.

Upon review, we find convincing the views expressed by Judge Greenberg and Judge Becker in their dissenting and concurring opinions in *Balascsak*. We are also guided by the decisions of other courts of appeals that have examined this matter. The issue of enhanced sentencing under the ACCA has frequently arisen in cases where the defendant received multiple convictions in a single judicial proceeding. In each of these cases, courts have held that the individual convictions may be counted for purposes of sentencing enhancement so long as the criminal episodes underlying the convictions were distinct in time. *United States v. Rush*, 840 F.2d 580, 581 (8th Cir.) ("it is the criminal episodes underlying the convictions, not the dates of conviction, that must be distinct to trigger the provisions of the ACCA"), *cert. denied,* — U.S. —, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir.1988) ("multiple convictions arising from multiple criminal transactions should be treated as separate convictions"), *cert. denied,* — U.S. —, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Wicks*, 833 F.2d 192, 193 (9th Cir.1987) (finding that the language of the ACCA "encompasses any person with three predicate convictions, whenever obtained"), *cert. denied,* — U.S. —, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986) (four convictions arising out of one indictment may be counted for sentencing enhancement where the convictions arose from separate episodes); *see also United States v. Harden*, 846 F.2d 1229, 1232 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988).

Other courts of appeal, like this court in *Balascsak*, have examined the ACCA to determine if multiple convictions arising out of a single spasm of criminal activity may be counted for sentencing enhancement. In these cases, courts considered whether to count merely the number of convictions obtained against the defendant, or whether to count the number of convictions obtained from separate criminal episodes. In each case, the "separate episode" test was adopted. Recently, the Second Circuit stated that "it is fairly well-established in other circuits that § 924(e)(1)'s reference to 'convictions' pertains to single 'episodes' of felonious criminal activity that are distinct in time, rather than literal convictions." *United States v. Towne*, 870 F.2d 880, 889 (2d Cir.1989). *See also United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.) (" 'the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode' ") (quoting *United States v. Petty*, 828 F.2d 2, 3 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988)), *cert. denied,* — U.S. —, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *Wicks*, 833 F.2d at 194 (two burglaries which occurred on the same night, but were committed at two different places at two different times could be counted as separate convictions for purposes of sentencing enhancement).

Therefore, as noted in *United States v. Towne*, "every federal court of appeals that has considered the issue has adopted the multiple episodes approach ... these courts have 'simply required that the criminal episodes be distinct in time.' " 870 F.2d at 889–90 (quoting Brief of United States Solicitor General filed in Opposition to Defendant's Petition for Certiorari at 5, in *United States v. Wicks*, No. 87–6807 (U.S. 1988)). While these decisions are not binding us, we find their reasoning persuasive. Furthermore, our own examination of the statute brings us to the same conclusion, namely that the statute does not require that the three predicate offenses be sepa-

---

**8.** *But see Balascsak*, at 684 (judges joining in opinion of Chief Judge Gibbons "do not disagree with the alternative ground for reversal relied on by Judge Becker in his concurring opinion").

rated by intervening convictions. In our analysis, we rely as well on the dissenting and concurring opinions in *Balascsak*.

## C.

When we interpret a statute, the starting point must be the language of the statute itself. *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). If the terms of the statute are plain and unambiguous, judicial inquiry is complete. *Burlington Northern Railroad Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987). If the language of the statute is ambiguous, we then look to the legislative history as a guide to the meaning of the statute. *Cf. Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *see also Herbert*, 860 F.2d at 621.

Section 924(e)(1) refers to "a person who ... has three previous convictions." "On its face, the term 'three previous convictions' does not appear to be ambiguous. The government, however, through the solicitor general, has previously conceded that similar language in a statute was ambiguous." *Herbert*, 860 F.2d at 621 (citing *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986), vacated 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), on remand 828 F.2d 2 (8th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988)); *see also Balascsak*, at 678–79. The ambiguity conceded by the solicitor general in *Petty*, however, pertained to whether previous convictions arising from a single episode could be counted for purposes of sentencing enhancement. *See Balascsak* at 687 n. 5 (Greenberg, J., dissenting). The statute has also been termed ambiguous with respect to whether the previous convictions could result from a single judicial proceeding. *Herbert*, 860 F.2d at 622. *Contra United States v. Wicks*, 833 F.2d at 193 (finding the statutory language clear and unambiguous).

By contrast, in this case, we look to the statute to determine if the language requires that the "convictions" must occur before the commission of the crime under-

lying a subsequent predicate conviction. We observe no such requirement in the plain language of the statute, and find the language of the statute unambiguous in that regard. *See Balascsak*, at 687 (Greenberg, J., dissenting). Accordingly, "[r]esort to the legislative history is neither necessary nor appropriate in this case." *Wicks*, 833 F.2d at 193.

▮ Even if the statutory language were not clear, "the legislative history of the statute is not inconsistent with the plain meaning of the statute." *Id.* at 194. Examination of the legislative history supports the adoption of the "separate episodes" test, *Towne*, 870 F.2d at 890; *Herbert*, 860 F.2d at 622; *Wicks*, 833 F.2d at 194; *but see Balascsak*, at 683 (rejecting the "criminal episodes" test as inconsistent with the congressional purpose of the statute), but does not compel the additional requirement that the defendant be convicted of one offense before committing the crime underlying a subsequent conviction. We decline to read this requirement into the statute and hold, for the purposes of enhanced sentencing under the ACCA, that a defendant need not be convicted of one predicate offense before committing the next predicate offense.

## D.

▮ Based on our holding, Schoolcraft is subject to enhanced sentencing under the ACCA. Schoolcraft was convicted of (1) a burglary in 1978, (2) a robbery which occurred on May 31, 1980, and (3) three armed robberies which took place on August 21–22, 1981. Even if these three armed robberies were considered as one conviction, *see United States v. Gillies*, 851 F.2d at 497, Schoolcraft has "three previous convictions" within the meaning of 18 U.S.C. § 924(e)(1). If we count merely the number of convictions obtained against Schoolcraft, or we count the number of convictions arising from separate criminal episodes, Schoolcraft has predicate convictions sufficient to subject him to enhanced sentencing under the ACCA. We will therefore affirm the judgment of sentence.

**V.**

We find the challenge to Schoolcraft's conviction on the basis of vindictive or selective prosection to be without merit. We also reject Schoolcraft's claim that there was insufficient evidence to convict him of possession of a firearm by a previously convicted person. We hold that the district court properly considered Schoolcraft's armed robbery convictions for the purpose of enhanced sentencing on count two under the ACCA. On this basis, we will affirm the judgment of conviction and judgment of sentence.

SCIRICA, Circuit Judge, dissenting.

For the reasons stated by Chief Judge Gibbons in *United States v. Balascsak,* 873 F.2d 673, 678–84 (3d Cir.1989) (in banc), I respectfully dissent from Parts IV and V of the court's opinion.[1] I would affirm the judgment of conviction, vacate the judgment of sentence, and remand for resentencing.

---

**1.** I join in parts I, II, and III of the court's opinion.