**GOVERNMENT OF the VIRGIN ISLANDS, Plaintiff,**

v.

**Adelbert BRYAN, Defendant.**

**Cr. No. 1989–129.**

District Court, Virgin Islands, D. Saint Croix.

Jan. 27, 1990.

L.C. Wright, Sp. Asst. U.S. Atty., Christiansted, St. Croix, U.S. V.I., for plaintiff.

Jeffrey B.C. Moorhead, Law Offices of Winston Hodge, Christiansted, St. Croix, U.S. V.I., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge, Sitting by Designation.

### INTRODUCTION

Defendant, Adelbert Bryan, filed a motion to dismiss the criminal information against him, claiming selective prosecution. The court held an evidentiary hearing on the matter on January 22, 1990. Defendant claims that because of his dissident political views and his frequent vocal criticism of various branches and agencies of the government—both local and federal—he has been singled out for prosecution. More specifically, defendant claims that thousands of people took items from Caribe Home Center ("C.H.C.") on St. Croix and that the government's decision to prosecute him, but not others, for allegedly taking merchandise without permission from

C.H.C. amounts to selective prosecution. He claims that this prosecution is a violation of his first amendment right to free speech. The government opposes the motion, claiming that its decision to prosecute defendant in no way singles out defendant nor was it made on a basis such as race, religion or some other arbitrary factor, or that defendant's prosecution is intended to prevent his exercise of a fundamental right or has been instituted in retaliation for exercising such a right. Rather, the government claims the decision to prosecute defendant was based simply on the right of the government to exercise its broad discretion in determining which cases to prosecute. Because the defendant has failed to demonstrate a colorable claim in support of his motion to dismiss for selective prosecution, his motion will be denied.

## FACTS

Defendant, Adelbert Bryan, is charged with grand larceny and possession of stolen property taken from the Caribe Home Center on St. Croix on the days immediately following Hurricane Hugo. Defendant is accused of taking numerous pieces of lumber and pvc pipe, three rolls of chicken wire, gas lanterns and other items, the total value of which allegedly exceeds $1,000.00. At the time of the hurricane and immediately thereafter, defendant was a captain in the Virgin Islands Police Department. He is also a former two-term senator in the Virgin Islands Legislature, and a recent gubernatorial candidate. He has been a vocal critic of both the local and federal governments. Defendant is a public figure and is looked upon as a leader by some members of the community.

In an effort to obtain evidence in support of his claim of selective prosecution, defendant, on January 9, 1990, filed a discovery motion seeking from the United States Attorney's Office videotapes and photographs allegedly of illegal acts being committed by the Virgin Islands National Guard from September 18–20, 1989. In addition, defendant sought any documents, wiretaps or recordings possessed by the Federal Bureau of Investigation ("F.B.I."), Central Intelligence Agency ("C.I.A.") and Department of Justice containing any reference to investigations of defendant prior to September 18, 1989. Even though defendant made no colorable showing that he was being selectively prosecuted, this court, nevertheless, on January 17, 1990, ordered the United States Attorney's Office to: (1) show defendant the requested photographs and videotapes, unless such disclosure would prejudice an ongoing criminal investigation; (2) file an affidavit stating whether in its decision to prosecute defendant, the United States Attorney's Office had considered any information from the C.I.A., Department of Justice, Department of Interior or F.B.I., other than the information contained in the affidavits of F.B.I. Agents David S.A. Reiser and Charles Douglas Jones, dated October 17, 1989 and October 2, 1989, which affidavits were already a matter of public record; and (3) secure from F.B.I. Agent Reiser an affidavit stating whether in making the determination to investigate alleged criminal activity of defendant in the aftermath of Hurricane Hugo, the F.B.I. considered information from sources other than the affidavits of Agents Reiser and Jones filed on October 17, 1989 and October 2, 1989. Defendant then filed, on January 18, 1990, a motion to amend the court's January 17, 1990 order, claiming the court order permitted the government not to disclose exculpatory material required to be disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. To remove any doubt, the court instructed the government that in the event it had not done so, it was ordered to turn over to defendant any *Brady* material within twenty-four (24) hours. The court further instructed the government that it was under a continuing duty to disclose any *Brady* material to the defendant. The government replied that any exculpatory material it possessed had been produced. Not satisfied, defendant then stated at the hearing that he wanted every file of the Federal Bureau of Investigation produced, which request this court denied as overly broad.

In response to this court's January 17, 1990 order, the United States Attorney's

Office on January 19, filed an affidavit stating that

in making the decision to charge the Defendant in the above-captioned case, the United States Attorney's Office did not consider any information received from the Central Intelligence Agency, the Department of Justice, the Department of Interior or the Federal Bureau of Investigation, other than that information set forth and contained in the Affidavits of Federal Bureau of Investigation Agents David S.A. Reiser and Charles Douglas Jones, dated October 17, 1989, and October 2, 1989, respectively.

Additionally, on January 19, 1990, the United States Attorney's Office filed the affidavit of David S.A. Reiser, Special Agent of the F.B.I. assigned to St. Croix following Hurricane Hugo as the Case Agent for directing the investigative efforts of the task force of federal law enforcement officers. Agent Reiser's affidavit states in pertinent part:

During the course of the investigative work, one of the subjects identified as having participated in the "looting" of St. Croix business was Police Officer Adelbert Bryan. The decision to investigate the actions of Adelbert Bryan was a result of information received through the investigative efforts of the Federal Agents on St. Croix. The decision to investigate Adelbert Bryan was based on the information set out in my affidavit, dated Oct. 17, 1989. No other information was considered in the decision to investigate Bryan.

The affidavit of Agent Reiser of October 17, 1989, attached to the Information, shows that the F.B.I.'s decision to investigate the activities of defendant after Hurricane Hugo was based solely upon information obtained by F.B.I. agents here on St. Croix after Hurricane Hugo and no information contained in the files of the F.B.I., C.I.A., Department of Justice, or the Department of Interior was considered by the F.B.I. agents in making the decision to investigate defendant. F.B.I. Agent Charles Douglas Jones' affidavit, filed October 2, 1989, in support of a request for a search warrant, makes it clear that information contained therein was based on interviews of local residents and his personal observations after Hurricane Hugo.

At the hearing, defendant asked the court to take judicial notice of at least eleven lawsuits filed by him against various government agencies. Defendant also pointed out that he has criticized the United States Attorney's Office on several occasions.

Defendant called four witnesses to the stand in support of his claim. The court advised each witness of his fifth amendment rights. The first witness, a St. Croix attorney, testified that he was at C.H.C. on Tuesday, September 19, 1989. The witness gave a statement to the F.B.I. that he went to C.H.C. hoping to buy some nails for repairs to his hurricane-damaged property and because he was unable to find an employee, he took "a handful" of nails without paying for them. He estimated that the nails were worth about $1.00. The witness also stated that he later went back and offered to pay for the nails. He has not been charged with a crime.

Defendant's second witness, a St. Croix resident, testified that he was at C.H.C. on or about September 19, 1989. The witness admitted that, while at C.H.C., he took two sheets of plywood and three pieces of lumber measuring $2'' \times 4'' \times 12'$. When asked the value of the items taken, the witness was uncertain whether the plywood was new or used and he did not know the value of the items. He also testified that the F.B.I. questioned him concerning defendant's alleged activities at C.H.C. and that he could not remember whether the F.B.I. agent questioned him about any other individuals. The witness testified that he told the F.B.I. that he had taken the items. He further stated that he has not been charged with a crime.

Defendant's third witness, the Chief of Detectives of St. Croix for the Virgin Islands Police Department, testified that he went to C.H.C. on or about September 19, 1989 and that he took nothing. He also testified that he was questioned by the F.B.I. concerning defendant and was told

that the F.B.I. was investigating defendant for alleged "looting."

The fourth witness, a Sergeant in the Virgin Islands Police Department, testified that he was at C.H.C. on or about September 19, 1989 and that he took nothing.

The defendant also sought to call to the stand the Assistant United States Attorney assigned to prosecute this case. When asked for an offer of proof, defendant stated that he wanted to find out from the Assistant United States Attorney what information he was "aware of" when making the decision to prosecute defendant. The court ruled that the affidavit filed on January 19, 1990 by the Assistant United States Attorney stating that no information was considered by the United States Attorney's Office in making its decision to prosecute defendant other than the information set forth in the affidavits of the F.B.I. agents dated October 17, 1989 and October 2, 1989 was sufficient, and denied defendant's request to call the Assistant United States Attorney to testify.

## DISCUSSION

■ The court begins its examination of defendant's claim of "selective prosecution" by recognizing that the government is granted broad discretion in deciding whom to prosecute. *See Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *United States v. Berrigan,* 482 F.2d 171, 180 (3d Cir. 1973). Additionally, the Third Circuit has recognized that there is a "presumption that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Torquato,* 602 F.2d 564, 569 (3d Cir.) *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979) (quoting *United States v. Falk,* 479 F.2d 616, 620 (7th Cir.1973) (en banc)). As the Supreme Court stated in *Wayte:*

> [S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely in his discretion. This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

470 U.S. at 607, 105 S.Ct. at 1530 (citation omitted).

The Third Circuit has set forth the requirements which a defendant must satisfy in order to be entitled to an evidentiary hearing on a claim of selective prosecution:

> In order to minimize the intrusion on the prosecutorial function and still enable a defendant to raise a claim of selective prosecution, the defendant is obligated to make a threshold showing of discriminatory prosecution before an evidentiary hearing will be accorded on this issue. The defendant bears the burden of proving a "colorable entitlement" to the claim of selective prosecution. Some credible evidence must be adduced indicating that the government intentionally and purposefully discriminated against the defendant by failing to prosecute other similarly situated persons.

*Torquato,* 602 F.2d at 569–570 (citations omitted). Indeed, the United States Supreme Court has stated that "a prosecutor need not explain his decisions unless the criminal defendant presents a prima facie case of unconstitutional conduct with respect to his case." *McCleskey v. Kemp,* 481 U.S. 279, 296–97 n. 18, 107 S.Ct. 1756, 1769 n. 18, 95 L.Ed.2d 262 (1987) (citations omitted). In the case at bar, even though defendant failed to demonstrate a colorable

entitlement to a defense of selective prosecution, the court nevertheless afforded him a hearing in order to give defendant every opportunity to make out such a "colorable entitlement." Defendant, however, has failed to prove a "colorable entitlement" in support of his claim of selective prosecution.

■ In order for a defendant to prevail on a claim for selective prosecution, the defendant must establish: first, that others similarly situated have not been prosecuted, *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir.1989) (citing *Government of the Virgin Islands v. Harrigan*, 791 F.2d 34, 36 (3d Cir.1986)); and second, that the government's discriminatory selection of him for prosecution was made on a basis such as race, religion, or some other arbitrary factor, or that his prosecution was intended to prevent his exercise of a fundamental right, or in retaliation against him for exercising such a right. *Id.* at 68; *Harrigan*, 791 F.2d at 36; *Torquato*, 602 F.2d at 569.

■ The court is aware that evidence has been presented in this case that hundreds and perhaps thousands of people were seen carrying away merchandise from stores on the days immediately following Hurricane Hugo. Defendant has failed, however, to make out a colorable showing that others similarly situated have not been, and will not be, prosecuted. In his attempt to show that others similarly situated have not been prosecuted, defendant called two witnesses who admitted to the F.B.I. that they took merchandise from C.H.C. without paying for it and that they have not been prosecuted. However, the similarity between these two witnesses and defendant ends there. As heretofore pointed out, the first witness took "a handful" of nails worth about $1.00 and the second witness took two sheets of plywood and three 2 × 4's. The items allegedly taken by defendant are claimed to have a value in excess of $1,000.00.

Defendant produced no evidence that the government has knowledge of others similarly situated who have not been prosecuted. Informations have been filed in this court against at least twelve defendants in connection with the alleged "looting" in the aftermath of Hurricane Hugo. The court therefore finds that in initiating this prosecution against defendant, the United States Attorney has lawfully exercised its discretion in deciding to prosecute this defendant.

■ No evidence has been presented to this court which could be considered as making out a colorable claim that defendant was prosecuted on the basis of his race, religion or other arbitrary factor. No colorable claim has been made out that the government intended in any way to prevent defendant's exercise of his first amendment rights, nor that the prosecution was designed in retaliation of his exercise of his first amendment rights.

This court has given defendant every opportunity to demonstrate a colorable claim of selective prosecution. Even after a hearing, however, defendant has failed to produce any credible evidence in support of his claim. He has produced no evidence that his prosecution is the result of purposeful or intentional discrimination.

Defendant's motion to dismiss for selective prosecution will be denied without further hearing. An appropriate order will be entered.