UNITED STATES of America, Appellee,

v.

Aaron OLIVER, a/k/a Aron Oliver & "Ollie".

Appeal of Aaron OLIVER.

No. 85–1190.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) March 4, 1986.

Decided March 31, 1986.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, Sharie A. Brown, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Stephen Robert LaCheen, Philadelphia, Pa., for appellant.

Before GIBBONS, BECKER and ROSENN, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

Aaron Oliver appeals from a judgment of conviction, after a jury trial, on a charge of possession of a firearm by a convicted felon. 18 U.S.C. App. I § 1202(a)(1). Oliver was sentenced as a dangerous special offender (DSO) under 18 U.S.C. § 3575. Although 18 U.S.C. App. I § 1202(a)(1) carries a maximum sentence of two years, Oliver was sentenced (as a DSO) to 12 years' imprisonment.

Oliver raises two issues on appeal. First, he contends that he was denied due process of law and was the victim of prosecutorial vindictiveness when, as the result of his failure to cooperate with state au-

thorities, his pending state firearms charge became the subject of a federal indictment. Second, Oliver alleges that the imposition of a 12-year sentence under 18 U.S.C. § 3575, upon his conviction under § 1202(a)(1), was disproportionate to his conviction and excessive. We find both of Oliver's arguments to be without merit and affirm the judgment of the district court.

## I.

On January 20, 1984, Philadelphia Police Department detectives took Oliver into custody as part of an investigation into the death of Ronald Luckett. When arrested, Oliver, a convicted felon, possessed a loaded .38 caliber revolver. On January 30, 1984, Oliver was charged with firearms violations.

Assistant District Attorney Arnold Gordon informed Oliver's attorney, Daniel-Paul Alva, that he wanted Oliver to cooperate with the Philadelphia Police in the investigation of the Luckett homicide. Gordon allegedly told Alva that, if Oliver failed to cooperate or flunked a lie detector test, Oliver's state firearms charge would be referred to federal authorities for prosecution. Alva advised his client to cooperate with the Philadelphia Police and expressed his belief that, in return for Oliver's cooperation, the state firearms charges would be withdrawn or subjected to an entry of *nolle prosequi.*

What transpired in state court is not entirely clear. It appears that Oliver cooperated with the state authorities to some degree and that they dropped the state charges against him, but that they ultimately deemed his cooperation to be insufficient and thus alerted the federal authorities to the fact that Oliver, a convicted felon, possessed a firearm. At all events, on October 19, 1984, the United States Attorney's Office for the Eastern District of Pennsylvania issued a complaint and warrant charging Oliver with a violation of 18 U.S.C. App. I § 1202(a)(1). An indictment soon followed. The government also filed a Notice of Request for Dangerous Special Offender Status pursuant to 18 U.S.C. § 3575.

On January 30, 1985, a jury convicted Oliver of a violation of 18 U.S.C. App. I § 1202(a)(1). The court denied Oliver's motion to dismiss the government's request for Dangerous Special Offender Status pursuant to 18 U.S.C. § 3575 and sentenced Oliver on March 13, 1985, as a dangerous special offender, to 12 years in prison and a $10,000 fine.

## II.

Oliver alleges that his due process rights, as guaranteed by the Fifth Amendment, were violated because his pending state firearms case was referred to the federal authorities for prosecution as a direct result of his failure to cooperate in the Luckett homicide investigation. This deprivation of due process, he contends, is the result of prosecutorial vindictiveness as described in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and thus his conviction should be reversed.

The Supreme Court held in *Blackledge* that it is a due process violation for a prosecutor to bring a more serious charge against a defendant who exercises his statutory right of appeal or collaterally attacks his conviction on a lesser charge. *Blackledge, supra,* 417 U.S. at 27–29, 94 S.Ct. at 2102–03. Actual retaliatory motivation need not exist; the Court's focus is on whether the possibility of increased punishment posed a realistic likelihood of vindictiveness. *Blackledge, supra,* 417 U.S. at 27, 94 S.Ct. at 2102.

The government argues that since the discussions between Assistant District Attorney Gordon and Oliver's attorney Alva amounted to plea bargaining, the proscriptions of *Blackledge* do not apply and Oliver's due process rights were not violated. In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court addressed the issue of whether the *Blackledge* decision applied to the plea bargaining process. The Court determined that no prosecutorial vindictiveness existed and no due process violation occurred in the context of a plea bargain where the defendant is informed of the terms of the deal and is free to accept or reject the offer. *Bordenkircher, supra,*

434 U.S. at 363, 98 S.Ct. at 667. The Court acknowledged that the guilty plea and the plea bargain "... are important components of this country's criminal justice system." *Id.* "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas'." *Id.* at 364, 98 S.Ct. at 668, citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973).

■ Since Oliver's theory of the case is that he was prosecuted by federal authorities solely because he failed to cooperate satisfactorily with the Philadelphia Police in the plea bargaining process, this case is governed by *Bordenkircher.*[1] It is not disputed that defendant's attorney, Mr. Alva, discussed with Mr. Oliver the decision that confronted him and explained the ramifications of each of his choices. Oliver made an informed decision not to cooperate fully with the police in the Luckett homicide investigation, though he did succeed in getting his state charges dropped. Thus, under the reasoning of *Bordenkircher,* there was no prosecutorial vindictiveness, for Oliver was fully informed of the consequences of his choices; he freely decided not to cooperate to a greater extent with the local authorities and, as a result, was later indicted by federal authorities.

We need not, however, rest our decision on this analysis alone. Other circuits that have addressed this issue have found that separate sovereigns have the right to bring increased charges or simultaneous prosecutions for similar or identical offenses and that there is no prosecutorial vindictiveness where the prosecutor's decision to prosecute is based upon the usual determinative factors. *See United States v. DeMichael,* 692 F.2d 1059 (7th Cir.1982); *United States v. Ballester,* 763 F.2d 368 (9th Cir.1985); *United States v. Robison,* 644 F.2d 1270, 1272 (9th Cir.1981). According to the facts of this case, the federal government's decision to prosecute Oliver was a proper exercise of such prosecutorial discretion. Oliver, who had felony convictions for forcible rape, receipt of stolen goods, and firearms defenses, possessed a firearm that was manufactured in Miami, thus affecting interstate commerce in violation of 18 U.S.C. App. I § 1202(a)(1). Oliver failed to establish that he was prosecuted because he failed to cooperate with the state authorities. Indeed there is no evidence that federal prosecutors participated in the plea bargain discussions between Mr. Alva and Assistant District Attorney Gordon. Further, the federal prosecutors had nothing to gain from Oliver's cooperation with the state authorities because the Luckett homicide was a matter of concern for the Philadelphia Police. Thus, we find no violation of Oliver's due process rights.

### III.

Oliver argues that his 12-year sentence, which the district court imposed pursuant to 18 U.S.C. § 3575,[2] is an excessive penalty for a violation of 18 U.S.C. App. I § 1202(a)(1), which carries a two-year maximum sentence. Oliver buttresses his argument with the assertion that other defendants charged as DSO's with violation of 18 U.S.C. App. I § 1202(a)(1) have fared better

---

**1.** Another apposite case is *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), where the Supreme Court addressed the applicability of *Blackledge* in another pretrial setting. In *Goodwin,* the defendant was indicted and convicted on a felony charge after he requested a trial by jury on misdemeanor charges. Pointing out that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution," the Court refused to adopt a presumption of vindictiveness. It held that decisions made in pretrial context, like those made in the plea

bargain process at issue in *Bordenkircher,* do not create the appearance or presumption of prosecutorial vindictiveness that is created when a prosecutor reindicts a defendant after a defendant has successfully exercised his right to appeal and obtained a new trial. *Id.* at 380–84, 102 S.Ct. at 2492–94.

**2.** 18 U.S.C. § 3575 provides in part:

(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted in courts of the United States, a State,

than he.[3] This court is permitted under 18 U.S.C. § 3576 to conduct broad reviews of dangerous special offender sentences. Title 18 U.S.C. § 3576.[4]

Oliver does not contest the district court's finding that he is a dangerous special offender under 18 U.S.C. § 3575. He argues that the twelve-year sentence imposed violates that part of 18 U.S.C. § 3575 that provides "the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and *not disproportionate in severity to the maximum term otherwise authorized by law for such felony*" (emphasis added). Congress added the proportionality requirement to ensure that the sentence for an offense remained at least partially focused on that offense rather than on prior conduct or other factors. *United States v. Felder*, 706 F.2d at 138. "The extent to which a sentence should be augmented will depend on a number of factors, such as the nature and seriousness of the conduct which led to the defendants characterization as a dangerous special offender in the first place." *Id.* at 140. To determine whether Oliver's 12-year sentence was dis-

proportionate, we have reviewed the sentencing hearing record in this case as well as the pre-sentence investigation report. We conclude that defendant's argument has no merit.

At the sentencing hearing, the district court considered the seriousness of the firearms offense of which appellant had been convicted. The court detailed the conduct that led to Oliver's classification as a dangerous special offender: Oliver has been convicted of three counts of forcible rape, receiving stolen goods, and two additional firearms violations. As the presentence investigation report also reveals, Oliver has been arrested nineteen times since 1979 on a variety of charges including possession of firearms, possession and manufacture with intent to deliver a controlled substance, receiving stolen property, filing a false police report, aggravated assault and recklessly endangering another person. Most of these arrests did not result in Oliver's conviction, yet Oliver told the U.S. probation officer that he "was fortunate to get off so many times because he was guilty on a majority of the listed cases." In connection with one conviction, Oliver

---

the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency or instrumentality thereof; or

(2) the defendant committed such felony as part of a pattern of conduct which was criminal under applicable laws of any jurisdiction which constituted a substantial source of his income, and in which he manifested special skill or expertise; or

(3) such felony was, or the defendant committed such felony in furtherance of, a conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws of any jurisdiction, and the defendant did, or agreed that he would, initiate, organize, plan, finance, direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all or part of such conduct.

3. Oliver cites the following cases: *United States v. Adams*, 771 F.2d 783 (3d Cir.1985) (8 years); *United States v. Felder*, 744 F.2d 18 (3d Cir.1984) (10 years); *United States v. Davis*, 710 F.2d 104 (3d Cir.1983) (12 years, but Oliver argues that Davis had a worse record); *United States v. Boyd*, Cr. No. 84–00082–01 (E.D.Pa.1984) (5 years).

4. The importance of appellate review of dangerous special offender sentences was stressed in the legislative history. *United States v. Felder*, 706 F.2d 135, 137 (1983). According to the Senate Report, appellate review of sentences is "the most effective technique" for "reducing the incidence of disparate and unwise sentences." S.Rep. No. 617, 91st Con., 1st Sess. 92 (1969).

jumped out of a car and shot a man on a step blinding him in the eye and continued to shoot after the man fell down a set of steps. He is an admitted cocaine dealer with sales on the average of $2,000 per week. He carries firearms "to protect his drug interest."

Under all the circumstances, we believe the district court's imposition of this augmented sentence was proper. Nowhere does the caselaw suggest that we should use, as a guide to proportionate sentencing, the sentences which other dangerous special offenders convicted under the same federal statute receive. In any event, Oliver's sentence is not so different from the sentenced imposed in *United States v. Adams, supra; United States v. Felder, supra; United States v. Davis, supra;* and *United States v. Boyd, supra,* for the same felony conviction. *See* n. 3, *supra.*

The judgment and sentence of the district court will be affirmed.