

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2005

# USA v. Thomas

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2208

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Thomas" (2005). *2005 Decisions.* Paper 1393.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1393

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2208

———

UNITED STATES OF AMERICA

v.

SHAWN THOMAS
aka
FLUKEY

Shawn Thomas,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cr-00818)
District Judge: Honorable Joel A. Pisano

———

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2004

Before: ALITO, BARRY, and FUENTES, Circuit Judges.

(Filed April 5, 2005 )

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Shawn Thomas appeals from his conviction and sentencing on a drug-conspiracy charge. As to the conviction, he argues that: the verdict is based on insufficient evidence, his confession should have been suppressed because he was illegally arrested, and the prosecutor vindictively filed charges against him. He makes various sentencing challenges, including challenges under United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). For the reasons below, we will affirm his conviction, but remand for resentencing in light of Booker.

## I.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. Appellant Shawn Thomas was arrested on May 5, 2000, for participation in a conspiracy to distribute crack cocaine headed by Timothy Smith. Smith's organization had been operating for years in Bridgeton, New Jersey, and the government had conducted extensive surveillance and wire-tap investigation on it. Thomas was implicated in the organization through this investigation, due to his close relationship with Smith, his telephone and paging activity, and through other suspicious activity.

Upon his arrest, Thomas gave officers a long and detailed confession, which was taped, of his involvement in the conspiracy. His attorney negotiated a plea bargain with the

state and local authorities, under which he would receive under one year of imprisonment in exchange for his cooperation in the prosecution of Smith and his organization. Although the federal prosecutor was unhappy with the lenity of the plea agreement when he was informed of it, he decided to honor it. However, Thomas did not appear to testify against Smith, thereby breaching his agreement. The federal prosecutor brought federal drug and conspiracy charges against Thomas, and he was convicted by a jury on the conspiracy count. The District Court sentenced him to a 30-year term of imprisonment. He appeals his conviction and his sentence.

## II.

Thomas makes several challenges to his conviction and sentencing: (1) that there was insufficient evidence to sustain the guilty verdict on the conspiracy charge; (2) that his confession should have been suppressed because he was warrantlessly arrested without probable cause; (3) that the prosecutor vindictively filed charges against him in violation of his due process rights; (4) that the District Court abused its discretion in denying him a downward sentencing departure for his cooperation with authorities; (5) that the District Court erred in not granting a downward departure due to sentencing discrepancies between him and his alleged co-conspirators; and (6) that he is entitled to resentencing under Booker, because his age was not determined by a jury with respect to his career offender status and, more generally, because the District Court may have given a different sentence, were it to have known that the U.S. Sentencing Guidelines are not binding. Each of these arguments

3

is addressed in turn.

## A. Sufficiency of the Evidence

In order to ascertain whether the evidence is sufficient to support a conviction, "we must determine whether, viewing the evidence most favorably to the government, there is substantial evidence to support the jury's guilty verdict." United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). The "strict principles of deference to a jury's findings" compel us "to draw all reasonable inferences . . . in the government's favor." United States v. Ashfield, 735 F.2d 101, 106 (3d Cir. 1984).

The centerpiece of the government's case is Thomas's 45-minute confession, in which he admits to his nearly life-long association with Timothy Smith and details his involvement in Smith's conspiracy to distribute crack cocaine. He explains the methods of payment used in the conspiracy, the manner of communication, and the process by which crack cocaine was "cooked" using the base ingredients. It is clear that this confession, if corroborated, provides ample evidence that Thomas was involved in a drug distribution conspiracy. See Opper v. United States, 348 U.S. 84, 90 (1954) (stating that "an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required" for both such statements).

In order to provide corroboration for a confession, the government need only "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." Id. at 93. The government introduced evidence that the

4

communication methods used by the conspirators was exactly that described by Thomas in his confession, including the codes entered into the paging devices and their meanings. Evidence of drug "cooking" materials found through police searches of the locations specified in Thomas's confession was also offered by the government. Thomas's knowledge of the source of the drugs–New York City–and the method of making crack cocaine from base ingredients provide some additional corroboration. Although each individual piece of corroborating evidence may not, by its own right, provide sufficient corroboration to support the confession, all of the evidence, taken as a whole, provides sufficient corroboration. Thus, because the confession, in itself, defeats Thomas's claim that the verdict is based on insufficient evidence, and because the confession is sufficiently corroborated, we find that the verdict must be upheld, if the confession was properly admitted.

## B. Admissibility of the Confession

Thomas argues that no warrant for his arrest on the conspiracy charge was in place at the time of his arrest, and no probable cause existed to arrest him, making the arrest illegal and his confession fruit of the poisonous tree. The government all but concedes that no warrant for the drug conspiracy charge was in existence at the time of Thomas's arrest, instead stressing the existence of other outstanding warrants at the time of the arrest and the fact that District Court found that probable cause existed for the arrest notwithstanding any warrant-related issues.

"Law enforcement authorities do not need a warrant to arrest an individual in a public

place as long as they have probable cause to believe that person has committed a felony." United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992). The probable cause inquiry involves the question whether, at the moment of arrest, "the facts and circumstances [the officers had] within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). Although we review a district court's probable cause conclusion de novo, we review the underlying fact-findings for clear error. United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).

"We have previously found probable cause even in the absence of the actual observance of criminal conduct when a prudent observant would reasonably infer that a defendant acted illegally." United States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002) (citing McGlory, 968 F.2d at 342). In Burton, law enforcement officers had evidence, consisting of the use of code words and the observation of money being counted, that a large drug transaction was to taking place at a particular location. 288 F.3d at 94-95. Some time later, they observed Burton leave that location and trailed his car until he parked it. Id. at 95. At that point, he was arrested. Id. We found that probable cause to arrest him existed, notwithstanding the fact that he was never observed actually engaging in illegal activity. Id. at 99. We noted that, "[w]hile Burton's association with known drug dealers is insufficient, by itself, to support probable cause, the significant accumulation of evidence supporting a drug transaction justified a reasonable inference that a felony was being committed." Id.

6

(citation omitted).

Much of the corroborating evidence for Thomas's confession also supports the District Court's probable cause finding. The use of codes with respect to paging and telephone communications could allow a reasonable officer to believe that criminal activity was afoot. Thomas's close association with Smith and other associates of Smith believed to be involved in Smith's drug ring could reinforce that belief. This is further bolstered by Thomas's documented brief jaunt to a location that officers knew was being used in furtherance of the activities of the drug conspiracy. It is worth also noting that Thomas would have been arrested with the other accused members of the conspiracy, but for law enforcement's inability to locate him at that time. Although none of this evidence on its own likely would support a probable cause finding, taken together we cannot say that it would have been imprudent for a reasonable officer to infer that Thomas had committed a crime. Accordingly, the District Court did not err in denying Thomas's motion to suppress his confession.

## C. Prosecutorial Vindictiveness

Thomas argues that the District Court erred in finding, after an evidentiary hearing, that the federal prosecutor in this case did not act vindictively in charging Thomas with offenses that, under the U.S. Sentencing Guidelines, could result in a sentence of 30-years to life imprisonment. Thomas suggests that, because the charges were filed in retaliation for his violation of the terms of the plea bargain under which he would have served less than one

year of imprisonment, the huge disparity in potential sentences is objective evidence of vindictiveness.

In order to show vindictiveness, Thomas need not show an actual retaliatory motivation; he simply must show that "the possibility of increased punishment posed a realistic likelihood of vindictiveness." United States v. Oliver, 787 F.2d 124, 125 (3d Cir. 1986). Successful assertions of vindictiveness generally occur in cases in which prosecutors file charges or step-up the seriousness of an indictment in order to retaliate against a defendant for the exercise of a legal right, such as the right to appeal. See Bordenkircher v. Hayes, 434 U.S. 357, 362-63 (1978). We have noted that "no prosecutorial vindictiveness exist[s] and no due process violation occur[s] in the context of a plea bargain where the defendant is informed of the terms of the deal and is free to accept or reject the offer." Oliver, 787 F.2d at 125-26 (citing Bordenkircher, 434 U.S. at 363). As recognized by one of our sister circuits, "a defendant should realize breaching a plea agreement is an event that could cause the prosecutor to withdraw leniency with respect to the sentencing recommendation previously given." United States v. Wells, 262 F.3d 455, 467 (5th Cir. 2001).

The facts found by the District Court, which Thomas explicitly does not challenge, show that the federal prosecutor was unhappy with the terms of the state-negotiated plea bargain, for which he had no part in negotiating. He, however, decided to honor the bargain, under which Thomas was to testify against Smith, in an apparent effort to preserve comity

8

and to avoid damaging the credibility of the state prosecutor's office. When Thomas chose to violate the agreement, he was fully aware that he was jeopardizing the short sentence he was to receive and opening himself up to federal prosecution. Once the deal that the federal prosecutor felt was too lenient was breached by Thomas, the prosecutor drafted a federal indictment against Thomas that he felt was justified by legitimate law enforcement interests. He did not craft the indictment with an eye towards retaliating against Thomas for his exercise of a legal right; he merely charged Thomas with what he wanted to charge him in the first place. Accordingly, it was not error for the District Court to refuse to dismiss the case on the basis of prosecutorial vindictiveness.

### D. Sentencing Issues

Among the sentencing issues raised by Thomas are arguments related to the recent Supreme Court decision in Booker. Having determined that those issues are best determined by the District Court in the first instance, we vacate the sentence and remand for resentencing in accordance with Booker.

### III.

For the reasons discussed above, we affirm Thomas's conviction, but vacate his sentence and remand for resentencing.

9