**UNITED STATES of America**

v.

**Aurelio Rafael MARTINEZ.**

**Criminal No. 14–564.**

United States District Court, E.D. Pennsylvania.

Signed May 8, 2015.

Nancy E. Potts, Paul G. Shapiro, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

Angela Halim, Law Offices of Angie Halim LLC, Philadelphia, PA, for Aurelio Rafael Martinez.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is Defendant Aurelio Rafael Martinez's motion to dismiss the Superseding Indictment, in which he claims selective prosecution and violation of his Fifth Amendment right to Due Process. For the reasons that follow, the Court will deny the motion to dismiss.

## I. BACKGROUND

### A. *Indictment and Procedural History* [1]

Defendant, a native and citizen of Honduras who was previously deported by the Immigration and Naturalization Service, had been employed at the Alpha–Liberty Joint Venture ("the Joint Venture") for a number of years. Def.'s Mem. Law Supp. Mot. Specific Disc. 6, ECF No. 25. As part of his employment, Defendant worked as an hourly wage employee on the federally funded Girard Point Bridge project in Philadelphia, Pennsylvania. *Id.* at 7; Superseding Indictment 1, ECF No. 20. On January 28, 2010, the date on which Defendant applied to work on this project, he completed Form I–9, Employment Eligibility Verification, listing a number ending in "2376" as his social security number and indicating that he was a citizen of the United States. Def.'s Mem. Law Supp.

Mot. Specific Disc. 7; Superseding Indictment 2. According to the federal special agent who investigated this matter and prepared the Criminal Complaint, Social Security Administration records indicated that the number Defendant used belonged to a female originally from Australia. Def.'s Mot. Specific Disc. 3.

On October 16, 2014, a federal grand jury returned the initial Indictment (ECF No. 12), which was followed by the Superseding Indictment on December 11, 2014. The Superseding Indictment charges Defendant with the following crimes: (1) fraudulent use of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2 (Count I); (2) false statements, in violation of 18 U.S.C. § 1001(a)(3) (Count II); and (3) reentry after deportation, in violation of 8 U.S.C. § 1326(a) (Count III).[2]

On February 2, 2015, Defendant moved for specific discovery and an evidentiary hearing related to a claim of selective prosecution, which he supplemented under seal (ECF No. 27). After a hearing on March 6, 2015, the Court denied the motion and granted Defendant leave to file the instant motion to dismiss. ECF No. 37. Defendant did so (ECF No. 38) and the Government has responded (ECF No. 40). The motion to dismiss is now ripe for disposition.

### B. *Facts Related to Selective Prosecution Claim* [3]

In or around 2012, the Government began an investigation into the Joint Venture. Def.'s Br. 4. Believing that the Joint Venture, *inter alia*, harbored and em-

---

1. The following facts are contained in both the Superseding Indictment and Defendant's briefs, and are therefore uncontested.

2. The Superseding Indictment retained the first two counts from the initial Indictment, and added the third count.

3. The facts recounted here are those that Defendant alleges in his briefing.

ployed illegal aliens, a federal special agent obtained search warrants for several of the Joint Venture's job sites. *Id.* at 5. The master Affidavit accompanying these search warrants lists twenty-two individuals whom the Government believed had used "false and/or stolen social security numbers." *Id.* at 6–7. The Government ended up prosecuting only two of these individuals—Defendant and Walter Morgan—both of whom were apparently illegal aliens from Honduras. *Id.* at 7–8.

Although a federal grand jury charged Morgan with the same two offenses filed against Defendant in his initial Indictment, these charges were later dropped. *Id.* Defendant asserts that the Government dropped Morgan's charges as part of a plea deal in which Morgan agreed to testify against his employer and to plead guilty to a misdemeanor offense. *Id.* at 8.

On May 13, 2014, a federal grand jury returned an indictment against three people associated with the Joint Venture: a part-owner, the foreman, and an employee assigned to a painting crew. *Id.* at 8–9. The indictment charged the defendants with a number of offenses, including the harboring of an illegal alien, in connection with the disturbance of federally protected peregrine falcons on the Girard Point Bridge. *Id.* at 9. In the resulting case, captioned *United States v. Frangos et al.,* No. 14–242, Morgan testified at trial as a Government witness—apparently to no avail, as the jury acquitted all three defendants. Def.'s Br. 9–10.

4. Defendant also asserts that, as a result of the Joint Venture's reporting requirements and the ongoing investigation, the Government potentially had notice of Defendant's illegal status long before the instant case was filed. *See* Def.'s Mem. Law Supp. Mot. Specific Disc. 7.

5. A defendant claiming selective prosecution bears the burden of proof, *United States v.*

On September 25, 2014, only a month before the *Frangos* trial started, the Government filed a Criminal Complaint against Defendant. *Id.* at 10. Citing to the implausibility of the misdemeanor offense that Morgan pled guilty to, Defendant asserts that Morgan was "a significant credibility concern" and thus the Government sought to secure Defendant's testimony as well. *Id.* at 10–11.[4] Unfortunately for the Government, Defendant had taken "great pains to hide his illegal status" from his employer, so he could not testify as to his employer's knowledge of his illegal status. *Id.* at 11. As a result, although Defendant attempted to cooperate, the Government did not pursue a plea agreement with him. *Id.* The initial and Superseding Indictments followed. *Id.* at 12.

In sum, Defendant now claims "that he was selectively prosecuted as part of the government's quest to compel another individual to speak only the words it wanted to hear: the Liberty Joint Venture employers knew the illegal status of at least two of its employees." *Id.* at 11.

## II. DISCUSSION [5]

The U.S. Supreme Court has discussed the unique nature of selective prosecution claims:

A selective-prosecution claim asks a court to exercise judicial power over a "special province" of the Executive. *Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The Attorney General and United States

*Schoolcraft,* 879 F.2d 64, 68 (3d Cir.1989), and "must establish each of the[ ] elements [of selective prosecution] with 'clear evidence' sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." *United States v. Taylor,* 686 F.3d 182, 197 (3d Cir.2012) (quoting *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)).

Attorneys retain " 'broad discretion' " to enforce the Nation's criminal laws. *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (quoting *United States v. Goodwin,* 457 U.S. 368, 380, n. 11, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3; see 28 U.S.C. §§ 516, 547. As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

Of course, a prosecutor's discretion is "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954), is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). A defendant may demonstrate that the administration of a criminal law is "direct-

ed so exclusively against a particular class of persons ... with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

*United States v. Armstrong,* 517 U.S. 456, 464–65, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (parallel citations omitted).

■ In order to establish a selective prosecution claim, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' " *Id.* at 465, 116 S.Ct. 1480 (quoting *Wayte,* 470 U.S. at 608, 105 S.Ct. 1524). Despite Defendant's effort to develop his claim on a limited factual record, he is ultimately able to show neither discriminatory effect nor discriminatory purpose. The Court evaluates each element, in reverse order.

### A. *Discriminatory Purpose*

■ Defendant concedes that his selective prosecution claim is not the typical one based on racial or religious discrimination, or on his exercise of a statutory or constitutional right. Def.'s Br. 14. He contends, rather, that the investigation and prosecution was initiated on the basis of an irrational factor: "the government arbitrarily decided to prosecute in a perceived attempt to obtain corroborative testimony from him." *Id.* at 15. The question therefore is whether the Government's use of an alleged "irrational factor" such as this may support a finding of discriminatory purpose in a claim of selective prosecution.

Few courts have addressed this question; those cases the parties have managed to find tend to limit selective prosecution claims to instances of invidious discrimination and discrimination based on the defendant's exercise of a funda-

mental right. *See, e.g., United States v. Scott,* 610 F.3d 1009, 1017 (8th Cir.2010) (denying selective prosecution claim in which the defendant alleged "he was only charged in federal court after his pending state court kidnapping case appeared to be 'going badly' and ... a federal indictment would accomplish the allegedly shared prosecutorial goal of incarcerating Scott for the rest of his life"); *United States v. Moore,* 543 F.3d 891, 900 (7th Cir.2008) (denying a selective prosecution claim because it was "premised on irrationality, not invidious discrimination"); *Rowsey v. Lee,* 327 F.3d 335, 343 (4th Cir.2003) (denying selective prosecution claim based on the prosecutor's use of "unarticulated criteria" in making the charging decision); *Virgin Islands v. Harrigan,* 791 F.2d 34, 36–37 (3d Cir. 1986) (denying selective prosecution claim because a prosecutor's unexplained change of charging policy is not unconstitutional arbitrariness).

Defendant cites only one case that potentially favors his position. In *United States v. Torquato,* the Third Circuit allowed that the defendant's claim of selective prosecution based on his political affiliation was legally valid, but held that he failed to make a showing sufficient to entitle him to an evidentiary hearing. 602 F.2d 564, 569 n. 9, 570 (3d Cir.1979). The court wrote:

> To permit criminal prosecutions to be initiated on the basis of arbitrary or irrational factors would be to transform the prosecutorial function from one protecting the public interest through impartial enforcement of the rule of law to one permitting the exercise of prosecutorial power based on personal or political bias. "Nothing can corrode respect

for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability."

*Id.* at 568 (quoting *United States v. Berrios,* 501 F.2d 1207, 1209 (2d Cir.1974)).

However, reliance on *Torquato* is misguided for several reasons. First, although the material quoted above indicates that "arbitrary or irrational factors" may constitute the basis for a selective prosecution claim, the *Torquato* court couched this statement in terms of "personal or political bias." Here, Defendant claims strategic prosecutorial behavior, not bias. Second, the *Torquato* court further qualified its "arbitrary or irrational factors" language by quoting from the Second Circuit in *Berrios,* which interpreted "arbitrary considerations" in terms of invidious discrimination and control over a defendant's exercise of his constitutional rights. Finally, *Torquato's* facts are distinguishable from those here. In *Torquato,* the selective prosecution claim was predicated on Defendant's political affiliation. As that court stated, "membership in a political party is protected by the First Amendment, and the mere exercise of that right cannot be punished by means of selective prosecution." *Torquato,* 602 F.2d at 569 n. 9. *Torquato,* therefore, represents the proposition that selective prosecution claims may be based on a defendant's exercise of his constitutional or fundamental rights. In the instant case, Defendant's claim has an entirely different basis; *Torquato* is therefore not applicable.[6]

---

**6.** The *Torquato* court, in dicta, suggested that a selective prosecution claim could be raised based on individual rather than class-based discrimination. *See Torquato,* 602 F.2d at 569 n. 9. However, there is no indication that the Third Circuit has formally adopted this view.

Defendant's claim here is not supported by the case law. Further, as the Government notes, courts have refused to hold unconstitutional prosecutorial efforts to coerce an offender's cooperation. *See* Gov't's Br. 17–18 (citing *United States v. Oliver*, 787 F.2d 124 (3d Cir.1986)). For these reasons, the Court finds that Defendant's theory of selective prosecution—that is, attempting to coerce Defendant's cooperation, without reference to race, religion, bias, or the exercise of a fundamental right—is not cognizable as a matter of law. Defendant therefore fails to show discriminatory purpose.

### B. *Discriminatory Effect*

 Even if Defendant were able to show that the Government exhibited a discriminatory purpose when it charged him, he cannot show discriminatory effect. In order to establish discriminatory effect, "the defendant must 'provide evidence that persons similarly situated have not been prosecuted.'" *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir.2012) (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir.1989)). Defendant's discriminatory effect argument runs as follows: "He has established that he was an individual belonging to known [sic] set of 22 individuals who all committed the same, or substantially the same, crime: use of a false or stolen social security number." Def.'s Br. 15.

The bald assertion that the Government failed to prosecute twenty other individuals who were under investigation for a similar crime is not "'clear evidence' sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." *Taylor*, 686 F.3d at 197 (quoting *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480). First, Defendant has not established how the twenty-two individuals were similarly situated, other than that they were all suspected of having committed a similar crime.[7] Second, although Defendant attempts to weave together a persuasive narrative based on the timing of the Indictment with respect to the case against his employer, numerous other plausible explanations exist for why he and Morgan were the only individuals prosecuted. The Court will not invade the Government's prosecutorial discretion on so slight a showing.[8] Defendant therefore cannot show discriminatory effect. Because Defendant is not able to establish either element of his selective prosecution claim, that claim fails.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to dismiss the Superseding Indictment. An appropriate order follows.

### *ORDER*

**AND NOW**, this 8th day of **May, 2015,** for the reasons stated in the accompanying memorandum opinion, it is hereby **OR-DERED** that Defendant's Motion to Dis-

---

7. The Government, noting that the Third Circuit has a narrow reading of "similarly situated," *see* Gov't's Br. 9 (citing *Taylor*, 686 F.3d at 196–97; and *United States v. Al Hedaithy*, 392 F.3d 580, 608 (3d Cir.2004)), points to Defendant's failure to show that any of the other individuals were illegal aliens or that they had been previously deported, *see id.* at 10–12.

8. Defendant might reply that the showing is only slight because the Court denied his motion for discovery. However, the Supreme Court has held that "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480. Defendant failed to meet this "demanding" standard, *id.* at 463, 116 S.Ct. 1480, and has no right to access what evidence he might have obtained.

miss the Superseding Indictment (ECF No. 38) is **DENIED.**

**AND IT IS SO ORDERED.**