952 A.2d 521

STATE OF NEW JERSEY IN THE INTEREST OF X.B., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 9, 2008—Decided July 31, 2008.

24

Before Judges PARKER, R.B. COLEMAN and LYONS.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Glenn D. Kassman,* Designated Counsel, on the brief).

*Wayne J. Forrest,* Somerset County Prosecutor, attorney for respondent (*Anthony J. Parenti, Jr.,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

LYONS, J.A.D.

Appellant X.B. was adjudicated delinquent of offenses that would have constituted the following crimes if committed by an adult: third-degree resisting arrest, contrary to *N.J.S.A.* 2C:29–2(a); fourth-degree aggravated assault, contrary to *N.J.S.A.* 2C:12–1(b)(5)(a); and the petty disorderly persons offense of defiant trespass, contrary to *N.J.S.A.* 2C:18–3(b). These offenses arose out of X.B.'s arrest for trespassing on public housing property, despite being notified that he was on a list prohibiting him from being on the Parkside Housing Complex (Parkside). Because we find that his inclusion on the list is constitutional as applied to X.B. and there is sufficient credible evidence in the record to support the trial court's finding of delinquency beyond a reasonable doubt, we affirm.

The facts and procedural history relevant to our consideration of the issues advanced on appeal are as follows. The Franklin Township Police Department prepared a list (the Parkside List) of individuals who are not permitted on Franklin Township Housing Authority (Housing Authority) property for various reasons, such as a criminal conviction or a finding of delinquency for drug or violence-related offenses. This list was then approved by the Housing Director and the attorney for the Housing Authority. The Parkside List is not available to the public, nor is there a procedure to challenge one's name being placed on the List or to remove one's name from the List after the passage of time.

The practice in Franklin Township is to notify individuals who are placed on the list face-to-face, not in writing. X.B., a juvenile, was placed on the Parkside List because of a May 10, 2003, arrest for assault, which subsequently led to an adjudication of delinquency for possession of a weapon. According to the police, both X.B. and his mother were notified in person that X.B. was on the Parkside List, that he was restricted from entering Parkside, and that he could be arrested if he did enter the complex.

On April 13, 2006, Franklin Township police observed X.B. traveling on a bicycle across Parkside property towards his residence on Minetta Road. They went to X.B.'s residence, a short distance away from the Parkside housing complex, to inform his mother that he was trespassing on Parkside property. As the officers approached the home, X.B. cursed at the officers and a disturbance ensued involving two other juveniles as well. As a result, an officer attempted to arrest X.B., who then pulled away from the arresting officer, flailed his arms in an attempt to resist being handcuffed, and struck the officer in the chest with his elbow. X.B. was then arrested and charged with resisting arrest, in violation of *N.J.S.A.* 2C:29–2(a); aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(5)(a); and defiant trespass, in violation of *N.J.S.A.* 2C:18–3(b).

The trial court heard evidence from several Franklin Township police officers, who testified about the Parkside List and that X.B.

had been placed on the list because of his adjudication as a delinquent for possession of a weapon. The officers also testified about the circumstances of X.B.'s arrest for trespassing, including X.B.'s attempt to resist the arresting officer, and how the officer was struck in the chest during the course of X.B.'s resistance. X.B. and his co-defendants presented several witnesses. While the judge found the testimony of the officers credible, he did not give great weight to X.B.'s witnesses and found X.B. delinquent. On September 12, 2006, the trial judge sentenced X.B. to one year at Jamesburg Youth Correctional Center, giving credit for twenty-three days already served.

X.B. filed a motion contesting the constitutionality of the defiant trespassing statute as applied to him. On October 27, 2006, after arguments from the defense, the State, and an amicus curiae argument by the Housing Authority, the trial judge found that the statute was constitutional as applied to X.B. and denied the motion.

In his appeal, X.B. raises the following points for our consideration:

POINT I

BECAUSE THE TRIAL COURT ERRED IN DENYING JUVENILE'S MOTION TO DECLARE THE DEFIANT TRESPASS STATUTE UNCONSTITUTIONAL AS APPLIED, HIS ADJUDICATION OF DELINQUENCY FOR THIS OFFENSE MUST BE REVERSED.

POINT II

BECAUSE THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE JUVENILE WAS GUILTY OF RESISTING ARREST AND AGGRAVATED ASSAULT, HIS ADJUDICATIONS OF DELINQUENCY FOR THESE OFFENSES MUST BE REVERSED.

We will address X.B.'s two points in turn. X.B. argues that the process by which his name was placed on the list was so arbitrary as to render the trespassing statute unconstitutional as applied to him. In addition, "X.B. challenges the defiant trespass statute[, N.J.S.A. 2C:18–3(b)], because it was applied to him by police in an arbitrary manner, in violation of his constitutional right to equal protection." We disagree.

■ X.B. argues that discriminatory enforcement of a statute or law by state and local officials is unconstitutional. While his general proposition is correct, we fail to see discriminatory enforcement by the police in enforcing the defiant trespass statute against X.B. "Public officials engage in unconstitutional discriminatory application or administration of a facially impartial law when they seek to enforce the law 'on the basis of an unjustifiable standard, such as race, or religion, or some other arbitrary factor,' or when they seek to enforce the law in order 'to prevent the exercise of a fundamental right.'" *Holder v. City of Allentown,* 987 *F.*2d 188, 197 (3d Cir.1993) (quoting *United States v. Schoolcraft,* 879 *F.*2d 64, 68 (3d Cir.), *cert. denied,* 493 *U.S.* 995, 110 *S.Ct.* 546, 107 *L.Ed.*2d 543 (1989)). Our State Supreme Court has amplified the federal rule that "[d]iscriminatory enforcement of an otherwise impartial law by state and local officials is unconstitutional." *Twp. of Pennsauken v. Schad,* 160 *N.J.* 156, 183, 733 *A.*2d 1159 (1999) (citing *Cox v. Louisiana,* 379 *U.S.* 536, 538–41, 85 *S.Ct.* 453, 13 *L.Ed.*2d 471 (1965); *Yick Wo v. Hopkins,* 118 *U.S.* 356, 373–74, 6 *S.Ct.* 1064, 1073, 30 *L.Ed.* 220 (1886)). However, to be unconstitutional, the enforcement of that standard must be based upon an "unjustifiable standard such as race, religion, or other arbitrary classification." *Ibid.*

There is no allegation that X.B. was placed on this list without justification. X.B. alleges that while some individuals are placed on the list because of their convictions, others have been placed on the list "simply because the police have determined that the individual has a 'propensity for violence' or [is] 'affiliated with a gang.'" We need not address the potential claim of such persons in this case, however, because X.B. was placed on the list due to his adjudication as delinquent for possession of a weapon. Such adjudication provides ample basis to prohibit a person from public housing to protect the inhabitants and insure a safe environment. It was not premised on an "unjustifiable standard such as race, religion, or other arbitrary classification."

X.B. further argues that the enforcement of the statute is constitutionally defective because once a person is put on the list,

there is no stated procedure to remove the person from the list, "even if that individual is later acquitted of the charge." Again, in this case, there was no attempt by X.B. to remove his name from the list. Nor was he acquitted of the offense for which he was adjudicated that resulted in his inclusion on the list.[1] Furthermore, X.B. did not assert that he had a legitimate reason for being on the property. *Compare State v. Dangerfield,* 171 *N.J.* 446, 457, 795 *A.*2d 250 (2002) (visiting a relative).

X.B. also argues that there was insufficient evidence to sustain his adjudication for the resisting arrest and aggravated assault charges. "Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." *State v. Locurto,* 157 *N.J.* 463, 474, 724 *A.*2d 234 (1999).

The trial court found the testimony of the arresting officer to be credible that when he informed X.B. that he was going to take X.B. into custody, X.B. resisted by pulling back, and struck the officer in the chest with his elbow. The trial court found that X.B. refused to be handcuffed during a lawful arrest and purposely attempted to prevent the officer from effecting the lawful arrest and used force—the elbow to the chest—against the officer. The trial court further found the testimony of X.B.'s witnesses to be less than credible. In the trial court's opinion, none of the testimony "raise[d] a doubt, no less r[o]se to the level of reasonable doubt." After carefully examining the trial record, we find that there is adequate evidence to support the adjudication below. *State v. Johnson,* 42 *N.J.* 146, 161, 199 *A.*2d 809 (1964).[2] We

---

[1] We note that although there is no established procedure to remove one's name from the list, an action in lieu of prerogative writs may be appropriate in such instances.

[2] A person has no right to resist arrest, even if illegal. *State v. Crawley,* 187 *N.J.* 440, 453, 901 *A.*2d 924, *cert. denied,* —— *U.S.* ——, 127 *S.Ct.* 740, 166

defer, therefore, to the trial court's findings of fact. *Locurto, supra,* 157 *N.J.* at 474, 724 *A.*2d 234.

Accordingly, we affirm X.B.'s adjudication of juvenile delinquency. However, in reviewing this situation, we do find certain aspects concerning the creation and the maintenance of the Parkside List to be troubling. We urge the Housing Authority to consider, to avoid future litigation as well as constitutional claims, adopting regulations regarding one's placement on and removal from the list and establishing a procedure whereby one can challenge placement on the List. We are satisfied, however, that, in this case, X.B.'s placement on the Parkside List was well justified. Further, there was no application by X.B. to remove his name from the Parkside List, or any apparent basis to do so.

Affirmed.

---

*L.Ed.*2d 563 (2006). A suspect "cannot be the judge of his own cause and take matters into his own hands and resist or take flight." *Id.* at 459, 901 *A.*2d 924.